UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JERRY W. LASHUAY, JR.,

        Plaintiff,                      Case No. 1:15-cv-1109

v.                                                 Honorable Paul L. Maloney

JAMES FORNWALT et al.,

        Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act (PLRA), PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Unknown Party. The Court also will dismiss Plaintiff's access-to-the-courts claim. The Court will serve the remainder of the complaint against Defendants Fornwalt and Schiebner.

**Discussion**

I.  Factual allegations

Plaintiff Jerry W. Lashuay, Jr. presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF), though the actions about which he complains occurred while he was housed at the Ionia Correctional Facility (ICF). Plaintiff sues the following ICF officials: Acting Assistant Resident Unit Supervisor (ARUS) James Fornwalt, Deputy Warden James Schiebner, and the unknown ICF Grievance Coordinator (Unknown Party).

Plaintiff resided at ICF from August 1, 2012 to April 28, 2015. While at ICF, Plaintiff resided in Housing Unit (HU) 7, which Plaintiff characterizes as an honor unit, with multiple privileges available to the Level-II prisoners. Plaintiff worked multiple contemporaneous jobs at a high rate of pay ($3.34 per day). He primarily worked as a Law Library Clerk six days per week, where he assisted other prisoners with their legal research and frequently typed their appeals and grievances on his personal word processor. Secondarily, Plaintiff worked as a Prisoner Observation Aide (POA) for three-hour shifts, for which he was on-call 24 hours each day. In that position, he observed prisoners who had threatened suicide or were deemed at heightened risk of self-harm. The position was a specialty job for which he had been vetted. Plaintiff also was tasked with keeping the payroll records for the POA shifts, and he was responsible for working out POA schedules that conflicted as infrequently as possible with prisoner callouts and primary employment shifts. As compensation for his scheduling duties, Plaintiff received five to ten extra POA shifts per month. Because of his multiple jobs, Plaintiff was able to send his elderly mother extra money,

sometimes as much as $150.00. ICF was located at a reasonable distance from Plaintiff's mother's home, and he had visits from family members at least twice each month.

On April 7, 2015, Plaintiff was issued a Notice of Package/Mail Rejection. The mail rejected was a publication called the *Journal of Prisoners on Prisons*, Volume 23, Number 2. The notice listed the reason for the rejection as follows: "The book poses a threat to the safety and security of the institution as it has a story on pages 39-43 that graphically describes a prisoner on prisoner rape that allegedly took place at the Riverside Correctional Facility, Ionia, Michigan." (Compl., ECF No. 1, PageID.14.) Plaintiff was interviewed on the package rejection, and Defendant Plaintiff claims that the article depicted a true event that happened to him personally and that he was the author of the article. Fornwalt explained that possession of the publication posed a threat to the order and security of the prison because Plaintiff could be targeted by sexual predators if other prisoners knew that he was raped as a teenager. Fornwalt also explained that the materials could interfere with Plaintiff's rehabilitation. Plaintiff told Fornwalt that he had a copy of the same article on his word processor, and he produced a copy. He argued that, had he wanted to circulate the article among prisoners, he could have done so earlier. Plaintiff claimed that, as the author of the article, he had an ownership interest in the publication. Defendant Fornwalt told Plaintiff that he would "ask up the chain" to see what could be done. (*Id.* at 15.)

On April 9, 2015, Defendant Fornwalt called Plaintiff into the office to hold a hearing on the package rejection. Fornwalt returned the typed copy of the text to Plaintiff and told him that Defendant Schiebner, ICF Deputy Christensen, Resident Unit Manager (RUM) Smith, Administrative Assistant Brooke Snyder, and Warden Smith had decided that rejection of the article was appropriate. Defendant Fornwalt therefore upheld the mail rejection, stating: "It is determined

that the description of a rape inside a prison setting is a threat to a facility, may facilitate or encourage criminal activity and may interfere with the rehabilitation of the prisoner. The prisoner will not be allowed to have the book." (*Id.*; *see also* Ex. 3 to Compl., ECF No. 1-1, PageID.33.) When asked what he wanted done with the book, Plaintiff stated that he wanted it sent to his attorney, Deborah LaBelle. Plaintiff also stated that he intended to challenge the hearing decision. Defendant Fornwalt responded, "You may find yourself on a bus." (Compl., ECF No. 1, PageID.16.) Plaintiff alleges that being put on the bus meant being transferred to another facility.

Plaintiff filed a grievance challenging the administrative hearing decision on April 14, 2015. On April 22, 2015, Defendant Fornwalt completed a security classification review for Plaintiff, indicating that the review was for the purpose of transfer. The review and transfer were approved by Defendant Schiebner. Plaintiff was the only prisoner packed up for transfer that date. Plaintiff alleges that Officer Wilson (Wilson #1) made a number of calls around the prison, in an attempt to stop the transfer. Wilson #1 told Plaintiff that he did not understand why Plaintiff, who was misconduct-free, would be targeted for transfer, when there were other prisoners with disciplinary problems in the unit. On April 27, 2015, Officer Wilson (Wilson #2) called Plaintiff to the office to update the POA payroll before he was transferred. Wilson #2 told Plaintiff that he would rather see others transferred and that Plaintiff was a model prisoner. On April 28, 2015, Plaintiff was transferred to KCF, where Plaintiff previously had spent ten years, until he was stabbed in the head by another prisoner in February 2009.

On arrival at KCF, Plaintiff's typewriter and surge protector were seized as contraband by Property Officer Goodell, and a misconduct ticket was written. On April 30, 2015, Plaintiff spoke with ARUS Bonnee, who told Plaintiff that he must have "pissed somebody off,"

since the northern-region prisons were considered disciplinary facilities. (*Id.* at 18.) During the discussion, Bonnee asked Plaintiff about the 2009 assault, stating that Plaintiff had never identified his assailants. Plaintiff told Bonnee that the incident had led to his transfer downstate and that he did not know the identities of his assailants. Bonnee told Plaintiff that it was likely that the assailants were no longer at the facility, but that KCF had become even more violent than in 2009, with almost daily assaults. Bonnee held a misconduct hearing with Plaintiff on May 6, 2015, ultimately returning the typewriter and accessories to Plaintiff. However, when Plaintiff received his typewriter, the memory had been erased.

That same date, May 6, 2015, Plaintiff wrote a grievance against ICF officials, alleging retaliation. He placed it in the mail, addressed to the ICF grievance coordiantor (Defendant Unknown Party). On May 22, 2015, Plaintiff sent a certified letter to the MDOC Director's Office, enclosing copies of his grievances and informing the office that ICF had not responded to his grievances or issued a grievance identifier, as required by policy. The letter asked the Director's Office to mandate that ICF accept and process Plaintiff's grievances. On June 4, 2015, Plaintiff received the signed return-receipt from the certified mail. On June 7, 2015, Plaintiff wrote a letter to KCF Deputy Daley, seeking a compassionate transfer to the Saginaw Correctional Facility (SRF) or the Thumb Correctional Facility (TCF), due to the failing health of his uncle. Daley responded on June 18, 2015 that Plaintiff was not eligible for transfer.

On June 16, 2015, Plaintiff filled out a kite addressed to the mental health program, seeking assistance for the anxiety and distress he felt being back at KCF. Plaintiff met with social worker LeBlanc on June 23, 2015. Plaintiff talked about the issues he was experiencing, and LeBlanc encouraged him to continue his spiritual practices.

Plaintiff received a response to his letter to the Director's Office, informing Plaintiff that he could not file a grievance directly to the Director's Office. Plaintiff was instructed to file the grievances with the facility inspector. On June 30, 2015, Plaintiff sent both grievances and supporting documents to Inspector Nevins at ICF. That same date, Plaintiff discovered two MDOC memoranda indicating that prisoners should not be returned to the Upper Peninsula without justification after such prisoners had already served a portion of their sentences with satisfactory results. (*See* Ex. 15-16 to Compl., ECF No. 1-1, PageID##56-60.) After speaking with ARUS Bonnee, Plaintiff filed a grievance on the issue. On July 14, 2015, ARUS Myers interviewed Plaintiff about his grievance. Myers asked if he wished to add information about where he wanted to be transferred. Plaintiff responded that he would like to be sent to the Saginaw Correctional Facility, in order to be close to his family. On July 21, 2015, however, Plaintiff was transferred with 300 other prisoners to the Chippewa Correctional Facility (URF), another prison located in the Upper Peninsula. When Plaintiff arrived at URF, his typewriter/word processor was seized. Plaintiff was given the choice of having a hearing on the seizure or having the word processor sent home. Because he was aware that many appliances ended up broken when a hearing was requested at URF, Plaintiff opted to have the word processor sent home to keep it safe.

Plaintiff contends that Defendants Fornwalt, Schiebner and Unknown Party interfered with his right to access the courts by failing to process his grievances. He also alleges that Fornwalt and Schiebner retaliated against him for filing a grievance against Fornwalt about the seizure of his mail. Plaintiff seeks declaratory and injunctive relief, together with nominal, compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Failure to Process Grievances

Plaintiff contends that Defendants Fornwalt, Schiebner and Unknown Party interfered with his right to access the courts by failing to accept and process his grievances. He also appears to argue that he had a constitutional interest in the proper administration of the grievance process.

To the extent that Plaintiff suggests that Defendants violated his right to due process when they failed to respond to his grievances, he fails to state a claim. Plaintiff has no due process right to pursue a prison grievance. The federal courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' failures to respond to his grievances did not deprive him of due process.

Moreover, Plaintiff fails to demonstrate a denial of his right to access the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*,

430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim.

*Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff wholly fails to demonstrate actual injury within the meaning of *Lewis*, 518 U.S. at 349. Even if Plaintiff was improperly prevented from completing the grievance process, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement of the PLRA only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim for denial of access to the courts.

Because Plaintiff's only claims against Defendant Unknown Party involve the failure to file or process his grievances, the Court will dismiss Defendant Unknown Party.

## B. Retaliation

Upon initial review, the Court concludes that Plaintiff has sufficiently alleged that Defendants Fornwalt and Schiebner retaliated against him for exercising his First Amendment rights. The Court therefore will order the complaint served on Defendants Fornwalt and Schiebner.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Unknown Party will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also dismisses Plaintiff's due process and access-to-the-courts claims against Defendants Fornwalt and Schiebner The Court will serve the remainder of the complaint against Defendants Fornwalt and Schiebner.

An Order consistent with this Opinion will be entered.


Dated: December 1, 2015                 /s/ Paul L. Maloney
                                        Paul L. Maloney
                                        United States District Judge