UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| JERRY W. LASHUAY, JR., # 176424, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:15-cv-1109 |
| v. | ) ) | Honorable Paul L. Maloney |
| JAMES FORNWALT, et al., | ) ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) ) ) | |

This is a civil rights action brought by a *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff is an inmate at the Richard A. Handlon Correctional Facility. (ECF No. 40). Plaintiff's complaint arises out of conditions of his confinement in April 2015, at the Ionia Correctional Facility (ICF). The defendants are two Michigan Department of Corrections (MDOC) employees at ICF: Assistant Resident Supervisor (ARUS)[1] James Fornwalt and Deputy Warden James Schiebner. Plaintiff alleges that on April 25, 2015, defendants retaliated against him in violation of his First Amendment rights by transferring him from ICF to another prison.[2] Plaintiff sues

_____

[1] Defendants state that the title "ARUS has been changed to A/PC (Acting Prison Counselor)." (Defendants' Brief at 1 n.1, ECF No. 19, PageID.176). The older title is used throughout this report and recommendation because it is used in plaintiff's complaint and there is no evidence that the new title was in use during the period at issue.

[2] All other claims have been dismissed. (ECF No. 6, 7).

defendants in their individual and official capacities. (ECF No. 1, PageID.2). Plaintiff

seeks an award of damages and declaratory and injunctive relief. (*Id.* at PageID.25).

The matter is before the Court on defendants' motion for summary judgment.

(ECF No. 18). Plaintiff opposes the motion (ECF No. 26, 28). For the reasons set forth

herein, I recommend that plaintiff's claims for declaratory and injunctive relief be

dismissed as moot and that all plaintiff's claims for damages against defendants in

their official capacities be dismissed with prejudice because they are barred by

Eleventh Amendment immunity. I recommend that defendants' motion for summary

judgment be granted and that judgment be entered in defendants' favor on all

plaintiff's claims for damages against defendants in their individual capacities.

A.     Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no

genuine issues as to any material fact in dispute and the moving party is entitled to

judgment as a matter of law. FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862,

866 (6th Cir. 2016). The standard for determining whether summary judgment is

appropriate is "whether 'the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law.' " *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir.

2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The

Court must consider all pleadings, depositions, affidavits, and admissions on file, and

draw all justifiable inferences in favor of the party opposing the motion. *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012); *see also Scadden v. Warner*, 677 F. App'x 996, 1001 (6th Cir. 2017). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016).

B.    Qualified Immunity

Defendants argue that they are entitled to summary judgment on plaintiff's claims for damages against them in their individual capacities on the basis of qualified immunity. "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.' " *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)); *see Estate of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is

-4-

distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.'" *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016); *see Holsey v. Wieber*, 811 F.3d 844, 846 (6th Cir. 2016); *see also Zuhl v. Haskins*, 652 F. App'x 358, 361(6th Cir. 2016).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Ziglar v. Abbasi,* 137 S. Ct. 1873, 1867 (2017) ("If a reasonable officer might not have known for certain that the conduct was unlawful -- then the officer is immune from liability.") (quotation and citation omitted); *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the

right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted); *Mitchell v. Schlabach*, 864 F.3d 416, 424 (6th Cir. 2017). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017). Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see White v. Pauly*, 137 S. Ct. at 552. In order to be clearly established, existing precedent must have placed the unlawfulness of the official's conduct "beyond debate." *Plumhoff*, 134 S. Ct. at 2023; *Mitchell*, 864 F.3d at 424.

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Estate of Hill v. Miracle*, 853 F.3d at 312 ("[T]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity.") (quotation and citation

omitted). The burden applies to each claim that the plaintiff is asserting against a defendant. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

C.   <u>Preliminary Matters</u>

Plaintiff's complaint is not properly verified under penalty of perjury because plaintiff has interjected the limitations that his allegations are "to the best of [his] information and belief." (ECF No. 1, PageID.25). "[S]tatements made on belief or on information and belief, cannot be utilized on a summary-judgment motion" and here, the Court cannot discern what statements plaintiff made on personal knowledge and under penalty of perjury and those he made on mere information and belief. *See Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015). Thus, plaintiff's complaint is not a verified complaint that could be considered as his affidavit in opposition to defendants' motion. *See, e.g., Mays v. Hemmila*, No. 2:15-cv-154, 2017 WL 2982009, at *2 (W.D. Mich. July 13, 2017); *Brown v. City of Grand Rapids*, No. 1:13-cv-964, 2016 WL 4920144, at *3 n.3 (W.D. Mich. June 13, 2016).

Plaintiff filed a document that he labeled as a declaration under 28 U.S.C. § 1746, but rather that utilizing the terms the statute requires, he diluted them by adding the qualifiers that the statements were accurate "to the best of [his] information and belief." (ECF No. 28, PageID.285). Section 1746 requires that an unsworn declaration under penalty of perjury must be subscribed as true under penalty of perjury, and dated, in substantially the following form:

> "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on (date).

(Signature)".

28 U.S.C. § 1746; *Jackson v. Heyns*, No. 1:13-cv-5691168, 2015 WL 5691168, at *1 (W.D. Mich. Sept. 28, 2015). Statements made on information and belief do not come close to satisfying the stringent statutory requirements.[3] 28 U.S.C. § 1746; *see Tenneco Auto. Operating Co. v. Kingdom Auto Parts*, 410 F. App'x 841, 848 (6th Cir. 2010); *Naumovski v. Fed. Nat'l Mort'g Ass'n*, No. 15-11466, 2016 WL 949220, at *2 (E.D. Mich. Mar. 14, 2016); *Smith v. Alford*, No. 1:13-cv-694, 2015 WL 6159397, at *3 (W.D. Mich. Oct. 20, 2015).

Plaintiff's brief concludes with a patently deficient "verification," again only made "to the b[e]st of [plaintiff's] information and belief." (ECF No. 26, PageID.273). "Verified" arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., LLC*, 357 F. App'x 656, 662 (6th Cir. 2009); *Houston v. McDaniels*, No. 1:12-cv-299, 2014 WL 1493402, at *2 n. 2 (W.D. Mich. Apr. 16, 2014). "Arguments in parties' briefs are not evidence." *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).

---

[3]The declaration of prisoner Blanton that plaintiff attached to his brief (ECF No. 26-1, PageID.277) uses the statutory language and it satisfies the requirements of 28 U.S.C. § 1746. However, Blanton's purported conversations with RUM Gilke and Corrections Officer Greene are hearsay. Further, purported "common knowledge" among prisoners regarding a work assignments believed to insulate prisoners against transfers does nothing to advance plaintiff's claims against defendants. Prisoners do not decide where, when, or under what circumstances they may be transferred between Michigan's prisons.

D.    Proposed Findings of Fact

The following facts are beyond genuine issue.  Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC) on criminal convictions. He began serving his non-parolable life sentence in 1984.  (Plf. Dep. at 8, PageID.209). Plaintiff is currently an inmate at a prison in Michigan's Lower Peninsula:  the Richard A. Handlon Correctional Facility.  (ECF No. 40).

In April 2015, plaintiff was an inmate at the Ionia Correctional Facility (ICF), another prison located in the Lower Peninsula.  Plaintiff was a Level II prisoner and he had been housed at that security level since 1993.  (Plf. Dep. at 17, ECF No. 19-4, PageID.214).  Plaintiff named two MDOC employees at ICF as defendants in this lawsuit:  Assistant Resident Supervisor (ARUS) James Fornwalt and Deputy Warden James Schiebner.

On April 7, 2015, a non-party at ICF issued a Notice of Package/Mail Rejection. (ECF No. 1-1, PageID.31).  ARUS Fornwalt's duties included conducting hearings on such notices.  (Fornwalt Aff. ¶ 1, ECF No. 19-2, PageID.192).  On April 9, 2015, ARUS Fornwalt upheld the rejection of the property in question.  The property was an article, apparently written by plaintiff, that depicted the rape of a teenage prisoner.  Fornwalt gave the following reasons for finding that the property was contraband:  "PD 05.03.118MM.  Prisoners are prohibited from receiving mail that may pose a threat to security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner.  It is determined that the description of a rape inside the prison setting is a threat to a facility, may facilitate

-9-

or encourage criminal activity and may interfere with the rehabilitation of a prisoner. The prisoner will not be allowed to have the book." (ECF No. 19-2, PageID.196). Plaintiff indicated that the rejected mail should be sent to his attorney. (*Id.*).

On April 14, 2015, plaintiff drafted a grievance challenging the result of the administrative hearing. (ECF No. 1-1, PageID.35). Nothing on the face of this document suggests that it was filed. The Grievance has no grievance number and the space provided for the date it was received by ICF's grievance coordinator is blank. (*Id.*). Plaintiff testified that he filed this grievance on April 14, 2015. (Plf. Dep. at 13, ECF No. 19-4, PageID.210).

The Kinross Correctional Facility (KCF) needed to send a prisoner to ICF because that prisoner had a court writ requiring his appearance in a court located near ICF. Plaintiff fit the criteria for a transfer. That is, he was a Level II prisoner serving a life sentence. Thus, he was not in need of any particular programming or parole placement at ICF or in its vicinity. Therefore, plaintiff was found to be a good candidate for an exchange for the prisoner coming to ICF. (Schiebner Aff. 3, ECF No. 19-3, PageID.199).

On April 22, 2015, ARUS Fornwalt completed a security classification review. (ECF No. 19-3, PageID.202). Fornwalt was unaware that plaintiff had filed any grievances regarding the mail rejection. (Fornwalt Aff. ¶ 5, ECF No. 19-2, PageID.194). He denied making any threat to transfer plaintiff. Fornwalt would have taken the same action regarding plaintiff's security classification screen if plaintiff had

not initiated a grievance regarding the result of the April 19, 2015, hearing. (*Id.* at ¶¶ 5-7, PageID.194-95).

The security classification screen was approved by Deputy Warden James Schiebner. (ECF No. 19-31, PageID.202). On April 27, 2015, Deputy Warden Schiebner signed the order for plaintiff's transfer from ICF to KCF. KCF is another Level II facility and plaintiff did not receive an increase in security level as a result of his transfer. (*Id.* at PageID.199, 201). When he signed the security classification screen and transfer order, Deputy Warden Schiebner was not aware of any complaints or grievances filed by plaintiff, nor any notices of intent that he may have received and challenged. ARUS Fornwalt did not direct Schiebner to transfer plaintiff or indicate to Schiebner that plaintiff should be transferred for any reason. Schiebner's sole reason for signing off on the security classification screen to transfer plaintiff was so that room could be made for the incoming prisoner who needed placement at ICF because of a court writ and plaintiff met the criteria for a transfer as far as his institutional needs. (*Id.* at PageID.199-200); *see also* Plf. Dep. at 17, ECF No. 19-4, PageID.214). Plaintiff was transferred on April 28, 2015. (ECF No. 19-3, PageID.201; Plf. Dep. at 13, 19, ECF No. 19-4, PageID.210, 216).

Plaintiff was an inmate at KCF for an unspecified period. The period was necessarily less than six months because when plaintiff filed this lawsuit on October 28, 2015, he was an inmate at the Chippewa Correctional Facility. (ECF No. 1 at PageID.1). Plaintiff testified at his June 10, 2016, deposition that he filed this lawsuit because he could not get any kind of satisfaction from the MDOC using the

grievance system. He had previously served ten years in prisons in Michigan's Upper Peninsula and more recently had served three years in Lower Peninsula prisons. He testified that being housed in an Upper Peninsula prison made it more difficult for family members to visit him. He testified that he had not been successful in persuading anyone to transfer him back downstate. He had written to KCF officials seeking a request for a compassionate transfer that would allow him to be housed at a prison near his family. Plaintiff filed this lawsuit in an attempt to compel MDOC officials to transfer him to a Lower Peninsula prison.[4] (Plf. Dep. at 5-6, 16, ECF No. 19-4, PageID.206-07, 213).

Plaintiff testified that he felt that KCF was the worst place that he could have been transferred because, back in 2009, he had been stabbed during an altercation at that facility. Plaintiff could not say whether defendant Fornwalt had knowledge of a 2009 incident. (Plf. Dep. at 13-14, ECF No. 19-4, PageID.210-11).

Plaintiff had held two work assignments at ICF. He testified that his work assignment classifications at KCF had been for the dog program and the tutor pool. Plaintiff stated that he was likely placed on a waiting list for those assignments, but he was not called to participate in those programs during the unspecified period of less than six months that he was housed at KCF. (*Id.* at 18-19, PageID.215-16).

---

[4]In October 2016, plaintiff obtained his desired transfer back to the Lower Peninsula and he had remained in Lower Peninsula prisons since October 2016. (ECF No. 36, 40).

**Discussion**

## I. Eleventh Amendment Immunity

Plaintiff's claims for damages against defendants Fornwalt and Schiebner in their official capacities are barred by Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012). Furthermore, states and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendants are entitled to dismissal with prejudice of plaintiff's claim for monetary damages against them in their official capacities.

## II. Mootness

Plaintiff's claims for declaratory and injunctive relief are moot. Plaintiff is an inmate at the Richard A. Handlon Correctional Facility. (ECF No. 40). Defendants are employed at ICF. Plaintiff's claims for declaratory relief against defendants are moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

-13-

### III.    First Amendment

Plaintiff alleges that defendants retaliated against him in violation of his First Amendment rights. Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. The plaintiff has the burden of proof on all three elements. *See, e.g., Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

#### A.    Protected Conduct

The filing of a prison grievance is generally constitutionally-protected conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). However, frivolous grievances are not constitutionally protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Defendants only "argument" with regard to the first element of a retaliation claim is that plaintiff "arguably established the first element of his claim (protected conduct)[.]" (ECF No. 19, PageID.182). Because defendants did not contest this element, no further discussion of the protected conduct element is necessary.

#### B.    Adverse Action

The second element of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in the protected conduct.

Plaintiff argues that his transfer to KCF constitutes an adverse action sufficient to support his retaliation claims against defendants because the transfer made it more difficult for his family to visit him, he was unable to send money to his elderly mother because he lost the favored work assignments that he had enjoyed at ICF, he had been stabbed at KCF in 2009, and a grievance that he filed on April 14, 2015, "still ha[d] not been resolved." (ECF No. 26, PageID.265-70). None of these circumstances satisfy the adverse action element.

Plaintiff's dissatisfaction with the processing of a grievance that he states that he filed on April 14, 2015, is not an adverse action. Courts have consistently held that there is no constitutionally protected due process right to an effective prison grievance procedure.[5] *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).

"[G]enerally, a transfer to another institution 'does not constitute an adverse action since a transfer is merely an ordinary incident of prison life.'" *Jones v. Caruso*, 421 F. App'x. 550, 553 (6th Cir. 2011) (quoting *Siggers–El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)). Because prisoners are expected to endure more than the average citizen and enjoy no protected right to remain incarcerated in a given correctional facility,[6] a transfer from one prison to another generally will not be considered

---

[5]The absence of an assigned grievance number is some evidence that the grievance (ECF No. 1-1, PageID.35) was not processed because it was never filed.

[6]It is well established that a prisoner has no inherent constitutional right to be housed in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *see also Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224

sufficiently adverse to deter a prisoner of ordinary firmness from engaging in protected conduct. *See Hix. v. Tenn. Dep't of Corr.*, 196 F. App'x. 350, 358 (6th Cir. 2006) ("[T]his Court has held that in the context of a First Amendment retaliation claim, a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility"). The Sixth Circuit has held that merely transferring a prisoner to a different facility is not adverse conduct without a showing that the prisoner suffered something more, such as a denial of access to the courts, loss of a work assignment necessary to pay the attorney assisting in his appeal of his criminal conviction, or placement in a significantly more restrictive prison environment. *See Hermansen v. Kentucky Dep't of Corr.*, 556 F. App'x. 476, 477 (6th Cir. 2014) (*per curiam*); *King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005).

Being transferred to a location that is less convenient for the prisoner or his family does not suffice to support a First Amendment retaliation claim:

---

(1976). In *Wakinekona*, the Supreme Court held that transferring an inmate sentenced in Hawaii state court to a mainland prison in California did not violate the inmate's constitutional rights. "Just as an inmate has no justifiable expectation to be housed within any particular prison within a State, he has no justifiable expectation that he will be housed in any particular State." 461 U.S. at 245. Confinement in another State . . . is within the normal limits or range of custody which the conviction has authorized the State to impose. Even when, as here, the transfer involves long distances and an ocean crossing, the confinement remains within constitutional limits." 461 U.S. at 247.

The Supreme Court has held that even transfers having a substantial adverse impact on a prisoner do not compromise any constitutionally recognized liberty interests. *Meachum*, *supra*, at 224. "Confinement within any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with more severe rules." *Id.* at 225.

> [A] transfer to "a less desirable prison which was more restrictive" or which places the prisoner "further away from his family" is not sufficiently adverse to maintain a retaliation claim. *See, e.g., Espree v. Burt*, 2016 WL 820943 at *4 (W.D. Mich., Feb. 12, 2016) (citations omitted); *see also, Henley v. Miller*, No. 13–1501 (6th Cir., Mar. 27, 2014) (in rejecting a prisoner's retaliation claim, the court observed that "Henley's claims that his transfer has resulted in a hindered ability to call family and friends, an inability to continue his education, less money for discretionary spending, and uncomfortable sleeping arrangements, even if true, do not constitute 'foreseeable consequences that inhibited [his] ability to access the courts").

*Lacy v. Duell*, No. 1:14-cv-537, 2017 WL 2791346, at *3 (W.D. Mich. Mar. 31, 2017).

Plaintiff presented no evidence that either defendant knew that plaintiff had been involved in an altercation and had been stabbed at KCF in 2009. He presented no legal authority that any incident so remote in time could support the adverse action component of a retaliation claim.

Further, loss of a particular work assignment is not an adverse action sufficient to support a First Amendment retaliation claim. Here, plaintiff's claim is based upon the assumption that his prison work assignment is analogous to employment, and that changes in his work assignment can be viewed as adverse actions upon which he can base a First Amendment retaliation claim. This assumption is unwarranted.

Prisoners assigned to work details are not "employees" of the MDOC. *See* Policy Directive 05.02.110 ¶ A (eff.2/25/08) ("Prisoners assigned to work are not employees of the Department and therefore are not eligible to receive workers' compensation or unemployment compensation benefits for their work assignments."). It is well established that a prisoner has no constitutional right to prison employment or to a particular prison job. *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Dobbins v.*

*Craycraft*, 423 F. App'x. 550, 552 (6th Cir. 2011). Nor does a prisoner have a right to employment under Michigan law, which gives prison administrators complete discretion regarding prisoner work assignments. *Dobbins*, 423 F. App'x. at 552; *see* Policy Directive 05.01.100 ¶ P (eff. 01/06/14) ("[a]ll employable prisoners shall be classified to a work assignment unless assigned to school").

"Prison work assignments are not employment in the traditional sense, but a condition of confinement." *Nettles v. Smoker*, No. 1:13-cv-1353, 2015 WL 1565429, at *5 (W.D. Mich. Apr. 8, 2015) (collecting cases). "Eighth Amendment claims arising from prison work assignments are typically limited to extreme working conditions which a prisoner claims to be cruel and unusual punishment." *Id.* at *5 (collecting cases). "Because a prison work assignment is a condition of confinement, a prisoner does not enjoy the benefits of a typical employer/employee relationship." *Id.* Prisoners are expected to endure more than the average citizen. *Siggers-El v. Barlow*, 412 F.3d at 701-02. "While the 'average citizen' might have certain expectations from being a contract or at-will employee, and relies upon his or her employment to provide for the necessities of life, prisoners, such as plaintiff, do not have a similar expectations or reliance with a prison work assignment. As discussed, prisoners with work assignments are not employees of the MDOC, and unlike the average citizen, plaintiff is in the custody of the state, which provides him housing, food, clothing and medical care." *Id.*

Prison employment is not employment in the ordinary sense, but represents a part of the rehabilitation program of the prison.[7] "Thus, the removal of a prisoner from his prison job has generally been held not to constitute 'adverse action' under the retaliation analysis." *Nettles*, 2015 WL 1565429, at *5 (quoting *Bailey v. Ingram*, No. 5:14–279, 2014 WL 5431300 at *5 (E.D. Ky. Oct. 24, 2014) and citing *Jewell v. Leroux*, 20 F. App'x. 375, 377 (6th Cir. 2001) and *Colvin v. Foy*, No. 1:13-cv-465, 2014 WL 1154658, at *3 (W.D. Mich. Mar. 21, 2014)).

I find that plaintiff has not presented evidence on which a reasonable trier of fact could find in his favor on the second element of a retaliation claim.

C.    Causation

The third element of a retaliation claim is causation. The plaintiff must demonstrate that the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X*, 175 F.3d at 394. With respect to causation, courts recognize that retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Rogers v. Bradley*, No. 1:12-cv-1201, 2015 WL 505738, at *10 (W.D. Mich. Feb. 6, 2015) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir.1987)).

On summary judgment, the causation element is analyzed under the burden-shifting framework articulated in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *See Thomas v. Eby*, 481 F.3d 434, 441-42

---

[7]"It trivializes the concept of First Amendment retaliation – which was fashioned by the Supreme Court and the Sixth Circuit to assure vindication of prisoner's free-speech rights – to allow dissatisfaction over a prison work detail to qualify as an adverse action sufficient to support a constitutional tort." *Davis v. Walton*, No. 1:12-cv-258, 2014 WL 320206, at *8 (W.D. Mich. Jan. 29, 2014).

(6th Cir. 2007). Accordingly, even if plaintiff demonstrates that his protected conduct "was a motivating factor in the defendants' actions, defendants are entitled to summary judgment if they demonstrate that they "would have taken the same action even without the protected activity." *Eby*, 481 F.3d at 441-42; *see also Garcia v. Thorne*, 520 F. App'x. 304, 310 (6th Cir. 2013).

Plaintiff has not presented evidence on which a reasonable trier of fact could find in his favor on the third element. He has not presented evidence that his protected conduct was a motivating factor in the decision to transfer him from ICF to KCF. The defendants have shown that they would have taken the same actions absent plaintiff's protected conduct. Plaintiff is serving a non-parolable life sentence, therefore he had no programming needs because he was not eligible for parole. Plaintiff was a Level II prisoner being transferred to another Level II prison because his space at ICF was needed to accommodate a prisoner being transferred into ICF because he had a writ for an appearance in a nearby court.

## IV.    Qualified Immunity

Defendants claim that qualified immunity provides an additional ground for granting summary judgment in their favor on plaintiff's claims for damages against them in their individual capacities. Defendants emphasize that plaintiff was transferred from one Level II prison to another Level II prison for the purpose of accommodating an incoming inmate with a writ requiring his appearance in a nearby court. (ECF No. 19, PageID.185-88). Plaintiff's response consists of a sentence and one citation: It is clearly established that prisoners enjoy a First Amendment right to

file grievances and lawsuits without being subjected to retaliatory transfers. *Siggers-El v. Barlow*, 412 F.3d at 703-04." (ECF No. 26 at PageID.273).

I find that plaintiff has not carried his burden of demonstrating that the actions taken by each defendant in April 2015 violated his clearly established First Amendment rights. *See Arrington-Bey*, 858 F.3d at 992-93. The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. at 198 (quotation omitted). Courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see White v. Pauly*, 137 S. Ct. at 552.

If anything, *Siggers-El* supports rather than undermines defendants' claim of entitlement to qualified immunity. The facts of that case were unique and the Sixth Circuit emphasized that its decision was based on those unique facts. Siggers-El was an inmate at the Mound Correctional Facility in Detroit, Michigan. He was in the process of appealing his criminal conviction. Siggers-El had contacted a Detroit lawyer who had agreed to review his "appellate brief and file for $300." 412 F.3d at 697. David Barlow was a Resident Unit Manager (RUM) at the Mound Facility, and Siggers-El needed Barlow's authorization to withdraw funds from his prison account to pay the attorney. *Id.* When Siggers-El sought approval for disbursement to pay his attorney, Barlow made a series of racist statements and refused to authorize the

disbursement.  Siggers-El then brought the attorney-fee disbursement problem to the attention of Barlow's immediate supervisor, and the supervisor instructed  Barlow to process the disbursement request.  *Id.*  "When Siggers-El returned to his housing unit Barlow had him summoned to his office and angrily stated, 'If you ever go over my head again, your ass is out of here.'" *Id.*

A short time thereafter, "Siggers-El required an additional $300 to pay his lawyer to come to the prison to interview him."  *Id.*  Siggers-El prepared another disbursement, and after nothing happened for a week, he went to Barlow to check on its status.  Barlow told Siggers-El to come back later in the day, and when he returned, Barlow stated that the disbursement had been approved.  The next day, Sigger's El's disbursement had been returned to him as rejected because it had not been signed by the warden.  *Id.*  When Siggers-El asked Barlow what had happened, Barlow told him to get out of his office.  Thereafter, Siggers-El explained the situation to the warden's administrative assistant and asked to see if he could expedite the process.  The next day, Barlow summoned Siggers-El to his office and the following exchange occurred:

> [Barlow] said, "Didn't I tell you what would happen if you ever [went] over my head again?"  After Siggers-El replied, "what are you talking about, man?," Barlow stated, "You'll see.  Get out of my office."

*Id.*  Two days later, Barlow filled out a Security classification screen designating Siggers-El for transfer.

The evidence in *Siggers-El* showed that Barlow's security classification screen and transfer had been anything but routine.  The assistant deputy warden at the Mound Facility testified that "apart from transfers for disciplinary or medical reasons,

-22-

'99.9 percent of the time,' transfers are done on a trade basis." *Id.* at 698. He also testified that an officer in Barlow's position "would normally prepare a transfer screen only after the transfer coordinator informed him that another facility requested a transfer." *Id.* There was no evidence that any request for a transfer had been relayed to Barlow by the transfer coordinator. *Id.* Further, there was significant evidence that "Barlow did not fill out the transfer order at the same time as the transfer screen [] because no request for a had yet been received by him." *Id.* Only Siggers-El had his transfer screen prepared at the very beginning of the month, with his transfer order not written until almost four weeks later. In addition, 15 of the 32 inmates were transferred within two days of the date of their screen and most of the rest were transferred within a week (the longest out-lier was two weeks). Again, only Siggers-El who was transferred on March 2, 2002, was not transferred until almost 30 days after the date of his transfer screen. Siggers-El was transferred to Adrian Regional Facility, which is near Adrian, Michigan, over seventy miles from Detroit. As a result of this transfer, Siggers-El lost his high paying job at the Mound Correctional Facility that he needed to pay his lawyer. Moreover, the transfer made it more difficult for Siggers-El's attorney to visit and represent him by moving him to a remote prison." 412 F.3d at 698-99.

It was based on the unique set of facts established by the evidence in *Siggers-El* that the Sixth Circuit held, "In this case, [] the transfer would deter a person of ordinary firmness from engaging in protected conduct, since here, the [prisoner] was not only transferred, but he also suffered a number of foreseeable consequences that

inhibited Plaintiff's ability to access the courts. As a result of the transfer, the Plaintiff not only lost the high paying job that he needed to pay his attorney, but the transfer also made it more difficult for the attorney to visit with or represent him because he was moved further away from her."[8] 412 F.3d at 702.

Here, plaintiff was not using funds from his prison work assignment to pay any attorney that he had hired to help him with the direct appeal of his criminal conviction. Plaintiff has been in the MDOC's custody since 1984. Less than a week passed from a date the security classification screen was completed and the date plaintiff was transferred. Plaintiff was transferred to make room at ICF for another prisoner who was transferring into the ICF so that he could appear in court as required by a court writ.

A clearly established right "is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. at 308. "[E]xisting precedent must have placed the statutory or constitutional questions beyond debate." *Id.* Generally, this requires a Supreme Court or published Sixth Circuit decision[9] on point for the unlawfulness of an action to be

---

[8]The Sixth Circuit expressed with unmistakable clarity that it was not creating a situation where prisoners would be able to insulate themselves from routine transfers by simply alleging that the transfer was in retaliation for engaging in some prior protected conduct. 412 F.3d at 702. If Siggers-El's transfer had been "*truly* routine" or otherwise necessary for operational needs, then the transfer "would not have been in retaliation to the exercise of protected conduct." *Id.*

[9]This Sixth Circuit does not consider its unpublished decisions to be binding precedent. *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 283 (6th Cir. 2016); *see also United States v. Yates*, No. 16-3997, __ F.3d __, 2017 WL 3402084, at *3 (6th Cir. Aug. 9, 2017). Thus unpublished Sixth Circuit decisions cannot 'clearly establish' a

apparent in light of pre-existing law.  *See Schattilly v. Daugharty*, 656 F. App'x 123, 127-28 (6th Cir. 2016).  The Supreme Court has repeatedly stated that courts should not define clearly established law "at a high level of generality." *White*, 137 S. Ct. at 552.  Thus, the plaintiff bears the burden of showing that the right was clearly established in light of the specific context of the case, not as a broad general proposition.  *See Mitchell*, 864 F.3d at 424; *Arrington-Bey*, 858 F.3d at 992-93.  I find that plaintiff has not carried his burden and that defendants are also entitled to summary judgment on plaintiff's claims for damages against them in their individual capacities on the basis of qualified immunity.

## Recommended Disposition

For the reasons set forth herein, I recommend that plaintiff's claims for declaratory and injunctive relief be dismissed as moot and that all plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.  I recommend that defendants' motion for summary judgment (ECF No. 18) be granted and that judgment be entered in defendants' favor on all plaintiff's claims for damages against defendants in their individual capacities.

Dated:  September 4, 2017          /s/  Phillip J. Green
                                   United States Magistrate Judge

---

principle or the proper application of a principle to a set of facts, because such decisions are not binding[.]"  *Crehan v. Davis*, 713 F. Supp. 2d 688, 697 (W.D. Mich. 2010).

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).